[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage of the parties was dissolved by a decree of this court (Steinberg, J.) entered on September 20, 1994. CT Page 482
The defendant mother has moved this court for modification of the custody order entered at the time of judgment regarding the parties' two minor children, Heather and Kayla.
In a somewhat unusual order, the court decreed that custody of the two minor children was to be sole legal custody in the defendant-mother and that custody would become joint legal custody nine months from the date of judgment UNLESS during that nine months the defendant-mother filed a motion for modification in which she sought an order that custody remain sole legal custody in her.
That order of the court was pursuant to the written stipulation of the parties.
Their stipulation was written on what had been captioned "Plaintiff's Proposed Orders", which had undergone extensive cross-outs, deletions and handwritten additions which were initialed by the parties. It was further expressly stipulated and ordered that "physical custody shall not change." It was then signed at the bottom by both parties on September 20, 1994. The matter then proceeded as an uncontested dissolution before Judge Steinberg, who incorporated the written stipulation into his judgment.
The defendant filed the instant motion for modification of custody (#171) on May 10, 1995, within the nine months provided for in the judgment of dissolution.
On May 30, 1995, the parties executed a written stipulation to participate in mediation with the Family Services Office regarding said motion. They were unable to reach an agreement concerning the relief sought in the motion and appeared before the court on numerous dates for hearings concerning the defendant's motion for modification of the September 20, 1994 judgment.
The court appointed an attorney for the minor children and she filed her appearance on June 20, 1995.
The movant offered evidence and testimony to establish the allegation in her motion that "since the date of the judgment, difficulties have arisen between the plaintiff and defendant which clearly demonstrate that the plaintiff and defendant cannot share joint legal custody of the children." CT Page 483
She seeks an order of this court that the joint legal custody order be revoked, that sole legal custody be awarded to her and that "that part of the judgment file which grants to the plaintiff the final decision making authority regarding religious decisions be reopened granting that authority to the defendant."
While many hours of evidence and testimony were offered by both parties concerning the defendant's motion, much of it was offered by one party to impeach the testimony of the other party's witnesses. While it may have been relevant and admissible for that limited purpose, a great deal of it was of little or no relevant value to the court in deciding the primary issue before it — that issue being whether or not sole legal custody of the two minor children should remain with the defendant-mother or become joint legal custody by the terms of the original judgment of dissolution.
In an effort to meet her burden of proof, the defendant offered evidence and testimony to establish the lack of cooperation and agreement that had existed between the parties regarding custody issues since the date of dissolution. Her testimony was replete with numerous episodes of what she considered to be poor parenting behavior by the plaintiff-father and, more importantly, of the inability of the parties to discuss those concerns with one another. She attributed that inability to communicate to the defendant almost exclusively.
She testified that there was a failure to communicate following the following events: a conversation by the plaintiff's finance with the two little girls about female menstruation and the purpose and function of tampons; the suggestion or intimation by the fiance to the older daughter that it was about time for her to start wearing a bra; the mid-week routine by the father and his fiance of shower baths for the two minor children; the frequent and, according to mother, almost obsessive brushing of the childrens' teeth by the fiance; the attendance by the fiance at the childrens' school on parents' open house night and at one child's First Communion ceremony.
While there were other events testified to by mother which were, in her opinion, occasions demanding follow up discussions by the parties, the ones mentioned above seemed to have one common theme. Each is an example of the finance engaging in tasks and responsibilities which mother believes she alone ought to be CT Page 484 doing. The defendant cannot accept the fact that, if only because the children are out of her custody periodically, certain others can and should and will routinely provide care, maintenance and, when appropriate, advice and counsel to her two daughters.
The defendant testified that on numerous occasions when she believed that an event had occurred which required discussion between the parties, she did not try and bring the matter to the plaintiff's attention because she felt it was futile to try and get him to explain himself or to change his behavior. In regard to those allegations, it is difficult for the court to find lack of communication when none was attempted, for whatever reason.
Despite the reservations the court has as to the defendant's motivations or lack thereof, sufficient evidence and testimony was elicited to permit a finding that on numerous occasions the parties evidenced a total inability to discuss and resolve many different issues which fall within the parameters of joint legal custody matters.
Some of the most persuasive evidence to that effect was offered by the plaintiff, himself, through testimony of his fiance, Frances Popilowski.
She testified that on a number of occasions since the dissolution she personally had witnessed episodes of physical altercations between the parties. Specifically, she testified that in the winter after the dissolution (1994) she saw the parties engage in an argument which resulted in the defendant slapping the plaintiff in the children's presence during his drop off of the children. She further testified that on another occasion the parties argued over the plaintiff's practice of videotaping the children to record their suspected mistreatment while in mother's custody. According to Ms. Popilowski's testimony, that argument also resulted in the defendant slapping her fiance, the plaintiff. She added that the defendant tried to slap the plaintiff "several times" over a period of time.
When asked if she thought the relationship between the parties was getting better (as the plaintiff had testified) or not, she replied, "it depends."
She further testified to a number of episodes of physical confrontation, or threats of the same between: plaintiff and defendant; plaintiff and defendant's current husband; plaintiff CT Page 485 and defendant's brother; plaintiff and defendant's father; and between the fiance herself and the defendant, in which the defendant allegedly shoved her and pulled her hair. All of these episodes occurred, according to the fiance, after the judgment of dissolution.
There was also unrefuted testimony that on one postjudgment occasion the defendant called the police to report that the plaintiff was in violation of a court order to return her children to her. The police responded and the long and short of it was that father was approximately ten minutes or so late returning the children after his court ordered visitation and that he had advised mother, albeit by having one of the children phone it to mother, that dinner was running late and not to expect the children exactly on time that evening.
Mother explained her extreme reaction to the childrens' tardy return by testifying that father repeatedly failed to comply with the visitation schedule and that she had enough of it.
There was also a great deal of testimony regarding the religious training of the children — an extremely relevant topic in any order of joint legal custody.
Unfortunately, the essential testimony about what the parents did or did not do for their two daughters' religious training was buried in a sea of testimony concerning the doctrine and dogma of the Roman Catholic Church including whether or not either or both of the parties were living in a "state of mortal sin" by virtue of their living arrangements with their respective significant others.
One fact the court could and did find after all the testimony was that religious education of the minor children is one of a number of joint custody issues which the parties are irrevocable deadlocked over.
The phrase "joint custody" is one of the most inarticulately used words in the arena of family law. It is commonly mistaken to be a subjective or relative concept when, in fact, it is a phrase very strictly defined and interpreted in the statutes and in case law.
"Joint custody" is defined in Section 46b-56a(a) of the Connecticut General Statutes as "an order awarding legal custody CT Page 486 of the minor child to both parents, providing for the joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents."
Section 46b-56a(b), C.G.S., provides, in part, "there shall be a presumption, affecting the burden of proof, that joint custody is in the best interest of a minor child where the parents have agreed to an award of joint custody . . ."
In the instant case the parties stipulated and agreed to an award of joint custody. As noted hereinabove, that joint custody was to commence by agreement of the parties nine months after the entry of the judgment of dissolution — unless the mother filed a motion to prevent that occurrence and preserve in her sole custody. There were no additional requirements for joint custody to begin. There was a condition precedent for sole custody to continue in mother.
It was a stipulation for joint legal custody and, consequently, the defendant-mother has the burden of rebutting by a fair preponderance of the evidence the presumption favoring joint custody provided for in Section 46b-56a(b).
As it was by the parties' stipulation and agreement that joint legal custody commence nine months after judgment, it is implicit that the reasons to continue sole custody in mother must be reasons arising after the date of the judgment of dissolution, September 20, 1994.
In any orders concerning custody and visitation the court's paramount concern is what is in the best interest of the minor children. In determining whether or not to order the parties to share joint custody, the primary focus . . . is the best interest of the child and the child's interest in sustained growth, development and well being, and in the continuity and stability of its environment. Cappetta vs. Cappetta, 196 Conn. 10, 16
(1985).
Based upon the evidence and testimony and taking into consideration the provisions of the relevant statutes, the court finds that since the date of the judgment there has been a substantial change in circumstances regarding custody of the two minor children. Specifically, that if the parties ever had the ability to cooperate to the extent necessary to make joint CT Page 487 custody a realistic expectation they no longer enjoy that degree of cooperation. It would not be in the best interests of the parties' two minor children to effectuate at this time an order of joint custody. For that reason, the defendant's motion to modify the judgment of dissolution is granted. That judgment is opened for the limited purpose of granting to the defendant-mother sole legal custody of the two minor children.
The court further orders that the final decision making regarding religious issues concerning the two minor children shall be in the defendant-mother.
Based upon the foregoing findings, the court denies the defendant's motion to suspend the visitation awarded to the plaintiff as part of the September 20, 1994 judgment.
The court denies the defendant's motion for an award of counsel fees for the prosecution of the motions herein.
By The Court,
s/Joseph W. Doherty Joseph W. Doherty, Judge